## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSTLVANIA

CARL R. STULL,                             )
                                           )        C.A. No. 2:17-CV-00378
        Plaintiff,                         )
                                           )
    v.                                     )        Magistrate Judge Lisa Pupo Lenihan
                                           )
LEEDSWORLD and POLY CONCEPTS               )
NORTH AMERICA,                             )
                                           )        Re: ECF No. 18
        Defendants.                        )

## <u>MEMORANDUM OPINION</u>

Presently before the Court is Defendants Leedsworld ("Leedsworld") and Poly Concepts North America's ("PCNA") Motion to Dismiss for failure to exhaust administrative remedies, and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Defendants' motion will be denied.

<u>FACTS</u>

Plaintiff, Carl L. Stull ("Plaintiff"), proceeding pro se, initiated this action against the Defendants, PCNA, and its subsidiary, Leedsworld, by Motion for Leave to Proceed in Forma Pauperis on March 24, 2017.  The Court granted the motion and the Clerk of Court filed Plaintiff's Complaint on March 30, 2017.  Plaintiff filed his Amended Complaint on June 16, 2017. (Amended Complaint, ECF No. 14) (hereinafter "Doc. No. 14 ¶__").  All factual allegations relating to alleged discrimination are directed to Defendant Leedsworld, Plaintiff's former employer.  (Doc. No. 14 ¶ 4.)  The Amended Complaint contains the following counts: age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, age discrimination pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43

P.S. § 951, *et seq.*, disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, gender discrimination under Title VII of The Civil Rights Act ("Title VII"), 42 U.S.C.A. § 2000e-2, and employment retaliation under Title VII, § 2000e-3. (Doc. No. 14 ¶ 10.)  The Plaintiff alleges in factual detail daily harassment and discrimination by his supervisor, Bill Church ("Church"), on the basis of age, sex and disability. (Doc. No. 14 ¶¶ 17-93.) The Plaintiff also alleges that he was fired in retaliation for engaging in the protected activity of lodging complaints with the Human Resources ("HR") department, first through the Employee Hotline, and less than 2 (two) weeks later, in the HR Office. (Doc. No. 14 Introduction at p. 2 & ¶¶ 45, 67.)

On or about November 4, 2015, the Plaintiff filed a charge of discrimination with the Pittsburgh office of the EEOC. (Doc. No. 14 ¶ 14.) In his initial EEOC charge attached as an exhibit to the Amended Complaint, the age discrimination box on the EEOC form is left blank; only the boxes for disability, sex, and retaliation discrimination are designated with an "x." (Doc. No. 14 at Ex. 1.)  Also attached to Plaintiff's Amended Complaint is a letter from the Plaintiff to the EEOC describing several discrepancies he discovered in the initial charge sheet following his telephone interview with the agency.  (Doc. No. 14 ¶ 14 & Ex. 3.)  Plaintiff's letter explains to the director of the Pittsburgh EEOC office that he was instructed not to make changes to the paperwork but to amend the charge through the EEOC office.  (*Id.*)  Attached to the letter is the amendment dated January 3, 2016 providing the information that was omitted from the initial charge. (*Id.*) In addition, Plaintiff, by signing a document entitled "Information for Complainants & Election Option to Dual File with the Pennsylvania Human Relations Commission," authorized the EEOC to dually file his charge with the Pennsylvania Human Rights Commission ("PHRC").  This document, signed on December 29, 2015 by Plaintiff, was received by the EEOC on January 6,

2016. (Doc. No. 14 at Ex. 4.) On or about December 27, 2016, the EEOC issued Plaintiff a Right-to-Sue letter. (Doc. No. 14 at Ex. 2.)  Plaintiff then initiated this civil action.

Defendants then filed the Motion to Dismiss presently at bar. (ECF. No. 18.)  In their brief in support of the Motion, Defendants assert that Plaintiff failed to provide sufficient factual support for his discrimination claims, and failed to exhaust his administrative remedies under the ADEA and PHRA. (Brief in Support of Motion to Dismiss, ECF No. 19 at 1-3) (hereinafter "Doc. No. 19 at ____").

Plaintiff responds that he has exhausted all necessary administrative remedies, that he is gathering proof to that effect, and that all proper filings are located at the Pittsburgh office of the EEOC and the PHRC.  (Doc. No. 23 at 2-8.)  Plaintiff also provided additional facts concerning his discrimination claims. (Doc. No. 23 at 8-19.)

The Defendants addressed Plaintiff's responsive arguments in their Reply Brief and argued the following: 1) no age discrimination claims were made in the Plaintiff's original EEOC charge; 2) all of the exhibits addressing that omission in the Amended Complaint are unverified; and 3) Plaintiff admitted that the PHRC "accepted" his case on May 12, 2016 and therefore, his PHRA claim must be dismissed for failure to exhaust administrative remedies because it was filed with the PHRC more than 180 days after his termination. (Reply Brief, ECF No. 26 at 2-5) (hereinafter "Doc. No. 26 at____").

Plaintiff was hired by Defendant Leedsworld in June of 2014, and terminated on October 13, 2015.[1] (Doc. No. 14 ¶¶ 20 & 53.)   Plaintiff was allegedly terminated for violating the employer's point system regarding "absenteeism and late arrivals." (Doc. No. 14 ¶ 60.) Plaintiff

---

[1] Paragraph 20 of the Amended Complaint contains a typographical error, indicating that Plaintiff was terminated in October 2016.  A review of the parties' submissions on the Motion to Dismiss reveals that Plaintiff was terminated in October 2015.

claims that the point system was prejudicially applied by Leedsworld and its supervisor Church, that no warnings were given prior to his firing, and that Plaintiff had adequate Paid Time Off ("PTO") to justify any absences. (Doc. No. 14 ¶¶ 47-60.) Throughout the subsequent unemployment hearing and EEOC investigation, Defendants allegedly maintained that Plaintiff was terminated for violating the employee points system. (Doc. No. 14 ¶ 60.)

Plaintiff was 51 years old at the time he was terminated, and had recently experienced health issues which required doctor appointments, medical testing, and FMLA leave. (Doc. No. 14 ¶¶ 2 & 23-30.) The medical issue concerned Plaintiff's respiration, which he alleges is a result of chemical exposure at the workplace. (Doc. No. 14 ¶ 24.) Either shortly after Plaintiff returned from FMLA leave or sometime during, Leedsworld hired supervisor Church. (Doc. No. 14 ¶ 28.) Plaintiff alleges that Church, on a daily basis and in the presence of witnesses, criticized his age, referred to him as weak and unable to work, expressed a desire to terminate Plaintiff, and exhibited signs of gender bias by favoring female employees regarding timeliness and work quality standards. (Doc. No. 14 ¶¶ 27-44.)  Plaintiff was allegedly criticized despite the good quality of his work, was constantly encouraged to quit, punished for taking vacation time, and faced numerous threats of termination so that younger employees could be hired. (Doc. No. 14 ¶¶ 27-50.)  Plaintiff also alleges that Church would excuse poor quality work and would alter records pertaining to timeliness for a particular female employee because she was "easier on the eyes so she couldn't be all that bad." (Doc. No. 14 ¶¶ 32, 58.)

Plaintiff alleges that he called the Employee Hotline and filed a formal complaint with Leedsworld's HR department in response to the discrimination, but nothing was done to investigate his complaints or to curtail Church's behavior. (Doc. No. 14 ¶¶ 37-45.)  Plaintiff states that the discrimination continued following his HR complaint, and that Church prejudicially

applied the points system as a means to terminate, and thereby retaliate, against him. (Doc. No. 14 ¶¶ 45-54.) Church allegedly assigned points to Plaintiff for clocking out on time, and for taking time off that he had rightfully accrued. (Doc. No. 14 ¶¶ 53-56.) Plaintiff also alleges that when he was terminated, Church stated, "I told you I was getting rid of you." (Doc. No. 14 ¶ 54.) The Defendants asserted in a subsequent unemployment hearing that Plaintiff violated the point system, and was terminated for that reason. (Doc. No. 14 ¶¶ 53-60.)

LEGAL STANDARDS

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler[v. UPMC Shadyside*, 578 F.3d [203,][] 213 [(3d Cir. 2009)] (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester Cnty. Intermediate Unit v.*

*Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)).  The scope of reviewable

documents includes "administrative filings, such as the record of [a] case before the EEOC."

*Hatten v. Bay Valley Foods, LLC*, No. CIV.A. 11-1122, 2012 WL 1328287, at *2 (W.D. Pa. Apr.

17, 2012) (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-

97 (3d Cir. 1993)).[2]

Importantly, the Court must liberally construe the factual allegations of a pro se

complaint because pleadings filed by pro se plaintiffs are held to a less stringent standard than

formal pleadings drafted by lawyers.  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007).  Therefore, if

the Court "can reasonably read [the] pleadings to state a valid claim on which [plaintiff] could

prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories,

poor syntax and sentence construction, or [plaintiff's] unfamiliarity with pleading requirements."

*Wilberger v. Ziegler*, No. 08-54, 2009 WL 734728, at *3 (W.D. Pa. March 19, 2009) (citing

*Boag v. MacDougall,* 454 U.S. 364 (1982) (*per curiam*)).

ANALYSIS

**Exhaustion of Administrative Remedies**

---

[2] Of particular relevance here are the decisions of district courts within this circuit that have held an EEOC charge of discrimination and other related documents (e.g., right to sue letter, intake questionnaire) are public records, and therefore, a court may consider these documents without converting a motion to dismiss into a motion for summary judgment.  *Branum v. United Parcel Serv., Inc.,* 232 F.R.D. 505, 506 n.1 (W.D. Pa. 2005) (Conti, J.) (citing *Rogan v. Giant Eagle, Inc.,* 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000) (Cohill, J.); *Burkhart v. Knepper,* 310 F. Supp. 2d 734, 741-42 (W.D. Pa. 2004) (Gibson, J.); *Hercik v. Rodale, Inc.,* No. Civ. A. 03-CV-06667, 2004 WL 1175734, at * 1 (E.D. Pa. May 24, 2004) (other citation omitted)); *see also Price v. Schwan's Home Servs., Inc.,* No. Civ. A. 05-220J, 2006 WL 897721, at * 3 (W.D. Pa. Apr. 3, 2006) (Gibson, J.) (When deciding a motion to dismiss, the court may rely on a PHRC complaint where the defendant made it part of the motion, the document was authentic, and plaintiff's claim rested upon it.) (citing *Steinhardt Grp., Inc. v. Citicorp,* 126 F.3d 144, 145 (3d Cir. 1997)).

Defendants first argue that Plaintiff failed to exhaust his administrative remedies under the ADEA because he failed to check the age discrimination box on the Charge of Discrimination form, his amended charge was not verified[3] and did not relate to the claims in the original charge, and there is no evidence that the EEOC received the amended charge.  Plaintiff responds that he noticed mistakes made by the intake interviewer at the EEOC on the "Charge Sheet" which prompted him to amend the charge which he then submitted to the EEOC Pittsburgh Office. Plaintiff states as follows:

> In the Amended complaint the Plaintiff made no additional statements or raised new issues with the statements filed in the Interview, the Amended complaint just showed that there was a clerical error by the interviewer by not checking all of the boxes or discrimination boxes that were discussed and statements made to charge the Defendants.  All statements made in the initial complaint were sworn to and accepted by the EEOC, with no other statements made in the amendment that needed to be sworn to in the Amendment.

(Doc. No. 23 at 3.)

An ADEA plaintiff must first exhaust his or her administrative remedies.  29 U.S.C. § 626(d).  Section 626(d) requires that a Pennsylvania plaintiff—a state that has an agency with authority to investigate claims of employment discrimination—file charges with the EEOC within 300 days after the alleged unlawful practice occurred.  29 U.S.C. §§ 626(d)(2) & 633(b); *see Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 111 (3d Cir. 2014).

As previously stated by this Court, "[a] charge of discrimination timely filed with the EEOC may be enlarged to include other alleged discrimination that is reasonably related to the

---

[3] The term "verified" is defined as "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a).

discrimination set forth in the original timely EEOC charge." *Zahavi v. PNC Fin. Servs. Grp., Inc.*, Civil Action No. 07-376, 2007 WL 3053090, at *6 (W.D. Pa. Oct. 18, 2007) (citing *Money v. Provident Mut. Life Co.*, No. Civ. A. 04-846, 2004 WL 1243739, at *2 (E.D. Pa. June 3, 2004) (other citation omitted). The Court looks to the EEOC regulations for guidance:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments . . . will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

29 C.F.R. § 1601.12(b).

Here, Plaintiff states that "[m]istakes in fragmenting the statements made by the [EEOC] Intake Interviewer" were responsible for the omission of age discrimination from the original EEOC charge. (Doc. No. 23 at 2.) Plaintiff emphasizes that the fragmented statements in the Charge were completed by the interviewer and not by the Plaintiff. (ECF No. 23 at 3.) When the Plaintiff noticed the omissions, he contacted the EEOC office, and was allegedly "informed not to make changes to the paperwork but to amend the complaint" by submitting the omitted information to the office of Roosevelt L. Bryant ("Bryant") of the Pittsburgh Office of the EEOC. (Doc. No. 14 at Ex. 3.) Per these instructions, the Plaintiff submitted "Amended Complaint for EEOC 533-2016-00227" to Bryant, which contained the allegations of age discrimination omitted by the intake interviewer. This document, as noted by Defendants, was not verified. *Id.* Plaintiff attempts to explain why he submitted "Amended Complaint for EEOC 533-2016-00227" as follows:

> While reviewing the paperwork, Particularly the Charge Sheet, I found missing information in the sheet, as well as unchecked Age box under Discrimination Based On area of the Charge Sheet.
> I filed the original Complaint on-line and was informed I would have to complete a telephone Interview to complete the complaint. During that interview I see that information was

> incomplete or missing and wish to enter this amendment to include
> all the information I gave during the Interview.

(ECF No. 14-3 at 3.)  Similarly, in his responsive brief, Plaintiff's argument is consistent with his statements in the amendment:

> In the Amended complaint the Plaintiff made no additional statements or raised new issues with the statements filed in the Interview, the Amended complaint just showed that there was a clerical error by the interviewer by not checking all of the boxes or discrimination boxes that were discussed and statements made to charge the Defendants.  All statements made in the initial complaint were sworn to and accepted by the EEOC, with no other statements made in the amendment that needed to be sworn to in the Amendment.

(ECF No. 23 at 3.)

The Court will not penalize the pro se Plaintiff for mistakes and omissions made by the initial intake interviewer at the EEOC where Plaintiff made a reasonable attempt to file a complete initial charge.  *See Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 964-65 (3d Cir. 1978), *discussed in, James v. Sutliff Saturn, Inc.*, 468 F. App'x 118, 122-23 (3d Cir. 2012).  The Third Circuit's opinions in *Hicks* and *James* presented similar but not identical circumstances.  In *Hicks*, the court of appeals vacated a grant of summary judgment holding that there was a genuine issue of fact as to whether the claimant had reasonably attempted to amend his charge of discrimination which was improperly rejected by the EEOC.  572 F.2d at 964.  The *Hicks* court stated that "[o]nce the charging party has done all that he can reasonably do to amend his charge in accordance with the Commission's regulations, the statutory policy of providing the EEOC with an opportunity to reconcile the grievance has been fulfilled."  *Id.*  The *Hicks* court continued that "[t]he individual employee should not be penalized by the improper conduct of the Commission."  *Id.* at 964-65. Similarly, in *James*, the claimant, through counsel, requested an amendment to his claim and asked

the PHRC case manager for directions as to how to proceed.  468 F. App'x at 122.  The court of

appeals noted the following:

> [I]nstead of sending James the PHRC's standard intake form, which includes language intended to satisfy the verification requirement, [the case manager] sent a two page[sic] printout from the agency's internal case management software, which contained no verification language, and directed James to answer the specified questions "in any format."  After complying with these instructions, James reasonably believed that his amendment was being processed. Our analysis in *Hicks* applies here.  James only failed to verify his amended charge because he was misdirected by the PHRC's express filing instructions.  By complying with those instructions, James satisfied the statutory policy of providing the PHRC with an opportunity to reconcile the grievance.  He should not be penalized for the PHRC's error.

*Id.* at 122-23.

Here, it appears that Plaintiff proceeded without benefit of counsel when filing the charge

with the administrative agency.  He alleges that he followed the intake interviewer's instructions

and believed that because he had initially offered complete information to the intake interviewer,

he was not required to verify the statement in the amendment because they were not new

statements, but statements omitted by the agency official, not the plaintiff.  (ECF No. 23 at 2-3.)

Like in *Hicks* and *James*, Plaintiff must not be penalized for the mistakes and omissions of the

EEOC intake interviewer where the record reflects that the pro se Plaintiff attempted to follow all

instructions from the EEOC to exhaust his administrative remedies.

Moreover, as discussed in the second holding in *Hicks,* even if the Court assumes that

Plaintiff's attempts to include the age discrimination claim in the initial verified charge were

unsuccessful, the facts alleged in Plaintiff's Amended Complaint reveal that an EEOC

investigation of the disability discrimination claim could reasonably be expected to encompass his

age discrimination claim.  572 F.2d at 965-67.  In *Hicks,* the court of appeals held that if the omitted

discrimination charge was so related to the acts giving rise to the initial charge filed with the

EEOC, such that an EEOC investigation of the initial charge could reasonably be expected to

encompass both discrimination claims, the omitted charge should be cognizable in a subsequent

lawsuit. *Id.* Here, Plaintiff avers the following in his Amended Complaint:

> 52. Bill Church specifically stated in front of witnesses after
> the failed attempt to fire the Plaintiff "[W]hy don't you make this
> easy on everyone and leave, you're to[sic] old and sickly for me to
> keep you here, you need replaced by one of these younger guys that
> would be grateful for my experience and my rules.["]  The terms
> to[sic] old and sickly were terms the supervisor used constantly to
> transfer the Plaintiff out of the department and or force the plaintiff
> to Quit[sic], after the Plaintiff refused to quit or be transferred[.]
> [T]he acts of the supervisor to harass and discriminate increased in
> severity, duration, and occurrences increased.

(ECF No. 14 ¶ 52.)  Plaintiff's allegations suggest that an EEOC investigation of Plaintiff's

disability discrimination claim would encompass his age discrimination claim.  Consequently,

Plaintiff's age discrimination claim is cognizable in this civil action.  *See Hicks*, 572 F.2d at 965-

67.  *See also Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting *Waiters v. Parsons*, 729

F.2d 233, 237 (3d Cir. 1984) (per curiam)) ("The relevant test in determining whether appellant

was required to exhaust her administrative remedies, therefore, is whether the acts alleged in the

subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the

investigation arising therefrom.").

Likewise, Plaintiff's PHRA age claim survives for the reasons described above.[4]

---

[4] The United States Court of Appeals for the Third Circuit has stated "that the PHRA is to be
interpreted as identical to federal anti-discrimination laws except where there is something
specifically different in its language requiring that it be treated differently." *Fasold v. Justice*,
409 F.3d 178, 184 n.8 (3d Cir. 2005) (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567
(3d Cir. 2002)). Finding no such distinguishing language, the Third Circuit has interpreted the
relevant provisions of the ADEA and PHRA "as applying identically . . . and as being governed
by the same set of decisional law." *Id.* (citing *Fogleman*, 283 F.3d at 567).  *See also Gomez v.*

Defendants offer further argument that the PHRA claim should be dismissed because although Plaintiff signed the "Information for Complainants & Election Option to Dual File with the Pennsylvania Human Relations Commission" form, "there is no evidence before this Court that his charge was in fact received by the PHRC within 180 days of the allegedly unlawful conduct." (ECF No. 19 at 6.)  Defendants continue that "[t]his form indicates only Plaintiff's desire to dually-file his charge; it does not show that the PHRC timely received his charge via a transmittal from the EEOC."[5]  (*Id.*)  Further, in their Reply Brief, Defendants point to Plaintiff's statement in his Response that the PHRC "accepted" his case on May 12, 2016, and therefore, Plaintiff's PHRA claim is untimely.  (ECF No. 26 at 3.)  It appears that Defendants rely on 16 Pa. Code § 42.14(c) which provides that a complaint filed with the PHRC "will be deemed filed on the date received by the Commission."  Recently, courts have considered whether the work-sharing agreement and the agency relationship created between the EEOC and the PHRC will affect this general rule.  *See Yeager v. UPMC Horizon*, 698 F. Supp.2d 523, 535-39 (W.D. Pa. 2010) (detailed analysis concluding that charge of discrimination is received and filed with the PHRC on date claimant elected to dually file); *Todora v. Neshannock Twp. Sch. Dist.*, Civil Action No. 16-647, 2016 WL 6433163, at *3 (W.D. Pa. Oct. 31, 2016) (recognizing that courts in this Circuit

---

*Allegheny Health Servs., Inc.,* 71 F.3d 1079, 1083-84 (3d. Cir. 1995) (PHRA and Title VII are interpreted similarly).

[5] Defendants reference Plaintiff's PHRA claim as it relates to age discrimination, citing paragraph 83 of Count II of the Amended Complaint.  The Court directs Defendants to paragraph 84 of the Amended Complaint that references Plaintiff's "complaint of discrimination."  The United States Court of Appeals for the Third Circuit requires that this Court liberally construe the allegations of a pro se complaint.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (holding that, when a plaintiff files a complaint pro se, the pleadings must be liberally construed and the Court must "apply the applicable law, irrespective of whether [the] pro se litigant has mentioned it by name")).  In light of paragraph 84, the Court must liberally construe Plaintiff's PHRA claim as including all forms of discrimination alleged in the Amended Complaint.

interpreting the work-sharing agreement have held that where plaintiff timely files a complaint with the EEOC, coupled with a request for dual filing, the complaint is deemed filed with the PHRC as of that date).

Here, the "Information for Complainants & Election Option to Dual File with the Pennsylvania Human Relations Commission" form signed by Plaintiff and dated December 29, 2015 states that "[i]f you want your charge filed with PHRC, including this form as part of your EEOC charge, with your signature under the verification below, *will constitute filing with the PHRC*." (ECF No. 14-4 at 2) (emphasis added). In *Pifer v. Myzak Hydraulics, Inc.,* Nos. 2:13-cv-452 & 2:13-cv-559, 2015 WL 300489, at *2-3 (W.D. Pa. Jan. 22, 2015) (Hornak, J.), the court considered the fact that some Pennsylvania federal district courts have held a charge initially filed with the EEOC is not deemed filed with the PHRC until the date of transmittal, while others have held that the charge is deemed filed on the date it was filed with the EEOC "if the Plaintiff represented that she wished to dual file." *Pifer*, 2015 WL 300489, at *2 (collecting Pennsylvania federal district court cases). In concluding that the PHRA claims were deemed filed on the date filed with the EEOC where the intent to dual file was manifested by the claimant, the *Pifer* court stated the following:

> The Court's review of the record reveals that both [Plaintiffs] took the necessary and logical steps required to dual file their claims with both the EEOC and the PHRC. Indeed, even Defendants concede that the Plaintiffs "asked that the charge be dual filed with the PHRC" when they filed with the EEOC. [] There is no record evidence that they took any actions to sidestep the PHRC's processes, or to frustrate that agency's administrative consideration of these matters. To require more would in the Court's estimation result in an obligation for a "belt and suspenders" filing approach that would not only elevate form over substance, but form over form, likely engendering confusion in the administrative record by a multiplicity of administrative filings made not out of necessity, but only from an abundance of caution. Rather than furthering the timely disposition of such matters at the

administrative level, imposing such a requirement would impede achieving that goal by interposing redundant "just in case someone loses the paperwork" administrative filings.   Because the Court concludes that "requiring claimants to file their charge with both agencies, or to place the risk on claimants of the EEOC not transmitting the charge to the PHRC before the 180-day deadline, renders the cross-filing aspect of the work-sharing agreement meaningless," *Zielinski v. Whitehall Manor, Inc.*, 899 F. Supp.2d 344, 353 (E.D. Pa. 2012), the Court concludes that both Plaintiffs sufficiently exhausted their PHRC administrative remedies.

*Pifer*, 2015 WL 300489, at *3.

Likewise, the record here reflects that Plaintiff took the necessary and logical steps required to timely dual file his claims with both the EEOC and PHRC.  Defendants do not dispute that Plaintiff asked that his charge be dual filed with the PHRC when he submitted the election to dual file to the EEOC.  Therefore, Plaintiff's signed request that his charge be filed with the PHRC renders his PHRA claims timely.  *See also Jankowski v. Fanelli Bros. Trucking Co.*, 3:CV-13-2593, 2014 WL 690861, at *9 (M.D. Pa. Feb. 24, 2014).

Consequently, Defendants' Motion to Dismiss Plaintiff's ADEA and PHRA claims for failure to exhaust administrative remedies will be denied.

**Failure to State a Claim under Rule 12(b)(6)**

Defendants contend that Plaintiff fails to state a plausible claim of gender discrimination and employment retaliation under Title VII, a plausible claim of age discrimination, and a plausible claim of disability discrimination. (Doc. No. 19 at 9.)

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to fail to refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1).  In Title

14

VII cases, a plaintiff need not make out a full "prima facie" case of discrimination in a complaint in order to state a plausible claim for relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016). Disregarding all legal conclusions of the Amended Complaint, and accepting all factual allegations as true, Plaintiff has set forth sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence that Plaintiff was a member of a protected class and that he suffered an adverse employment action when he was terminated. More specifically, Plaintiff alleges that Church excused poor quality work performed by a female employee, stating that "she was easier on the eyes so she couldn't be all that bad." *Id.* Plaintiff also alleges that the same female employee's "time card" was repeatedly altered by Church to mask early departures and late arrivals to work. *Id.* Plaintiff, in contrast, was allegedly fired for a prejudicial application of the timeliness and absences policy. (Doc. No. 14 at 60.) These allegations regarding the lenient standards for female employees, coupled with Church's alleged discriminatory statements and actions towards Plaintiff, provide direct evidence that he was treated "less favorably" due to his gender, an "impermissible criterion" under Title VII. Therefore, the factual allegations included in the Amended Complaint create a plausible claim of "disparate treatment" on the basis of gender. *Id.*

In order to survive Defendants' Motion to Dismiss Plaintiff's retaliation claim, Plaintiff must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence that Plaintiff engaged in conduct protected by Title VII; his employer took adverse action against him; and a causal link exists between Plaintiff's protected conduct and the employer's adverse action. *Connelly*, 809 F.3d at 789 (citing *Charlton v. Paramus Bd. Of Educ.,* 25 F.3d 194, 201 (3d Cir. 1994)).

Here, Plaintiff went on FMLA leave at some point after April 2015, was allegedly fired on October 13, 2015, and filed two complaints with HR at some point during the interim. Doc. No. 14 ¶¶ 23, 37, 53. The Plaintiff alleges statements evincing a retaliatory intent at the time of his firing, specifically by Church, including "I told you I was getting rid of you." (Doc. No. 14 ¶ 53.) Plaintiff engaged in the protected activity of lodging two complaints with the HR department, was allegedly discriminated against for doing so, and was ultimately fired. Doc. No. 14 ¶¶ 17-63. These allegations, taken together, create a plausible retaliation claim under Title VII.

A plaintiff asserting a violation of the ADA asserts a prima facie case of age discrimination by alleging that: "'(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (quoting *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998)). The scope of discrimination under the Act includes "adverse actions motivated by prejudice and fear of disabilities . . . [and the] fail[ure] to make reasonable accommodations." *Id.* The plaintiff's disability must conform to the statutory definitions and exceptions of the ADA.[6] Similarly, the plaintiff and alleged discriminating

---

[6] The term "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual . . . a record of such an impairment; or . . . being regarded as having such an impairment." 42 U.S.C. § 12102. The term "being regarded as having such an impairment" requires that "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* A "major life activity" encompasses a broad range of activities including: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* The ADA does not apply to a "transitory or minor impairment" with an "expected duration of 6 months or less." *Id.*

employer must both qualify under the statute.[7] The affected employee must also provide notice of the disability and make a request for accommodation. *Taylor*, 184 F.3d at 313. Although there is no formal notice requirement under the statute, the notice element hinges on whether "the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Id.*

In the Amended Complaint, Plaintiff alleges that he was fired due to a prejudicially applied work absence policy. (Doc. No. 14 ¶¶ 47-66.) He alleges that one such basis of prejudice is his disability. (Doc. No. 14 at ¶ 10.) Plaintiff meets the definition of a "disabled person" under the statutory scheme of the ADA by being regarded as having a disability by supervisor Church, whether the condition actually affected Plaintiff's life activities or not. 42 U.S.C. § 12111. (Doc. No. 14 ¶¶ 23-27, 39.) Defendants Leedsworld and PCNA also qualify as "employers" under the Act. *Id.* at § 12111. Plaintiff alleges that despite his condition, he was qualified to perform the duties of the job, and upheld a high standard of work quality. (Doc. No. 14 ¶¶ 21-22, 38.) The Plaintiff supports his disability discrimination claim with the following averments:

> The supervisor also made statements in front of witnesses[] ["]I need to transfer you to a department where you wont [sic] be a burden on the rest of the department since you can't keep up with healthy workers, why don't you just do us all a favor and go back on FMLA.["]  . . . [T]he supervisor mockingly in front of witnesses stated[] ["]don't give to[sic] many orders to Carl[,] we don't want him to have an episode from working to [sic] hard[.]"  . . . Church specifically stated in front of witnesses after the failed attempt to fire

---

[7] A plaintiff must be a "qualified individual" defined in the statute as: "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111. "The term "employer" means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person." *Id.*

> the Plaintiff[:] "[W]hy don't you make this easy on everyone and leave, you're to [sic] old and sickly for me to keep you here, you need to be replaced by one of these younger guys . . . ."

(Doc. No. 14 ¶¶ 39, 40, & 52.) Defendant Leedsworld and its supervisor Church had sufficient notice of Plaintiff's disability through their dealings with his physician and the FMLA leave for which he qualified. (Doc. No. 14 ¶¶ 23-25.) Plaintiff's firing can also be considered an adverse employment decision under the ADA. Here, Plaintiff has clearly provided enough factual detail to support a plausible disability discrimination claim.

The ADEA "makes it unlawful for an employer: (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623 (a).  The protections of the ADEA are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631 (a).  A disparate treatment claim, as is alleged here, is governed by § 623 (a)(1). *Karlo v. Pittsburgh Glass works, LLC,* No. 15-3435, 2017 WL 83385, at *4 (3d Cir. Jan. 10, 2017) (citations omitted).

Plaintiff alleges numerous and direct instances of discrimination on the basis of age, coupled with the intent to terminate him in order to hire younger workers. (Doc. No. 14 ¶¶ 33-34.) Church allegedly made the following statements: "Your [sic] to [sic] old for me to retrain, I got to get rid of you older hitters and get these younger guys that will do what I say regardless of what these stupid papers [order forms] say.["]  "Your [sic] to [sic] old to do this the way I want[.]  I need to replace you with another young kid that wants to keep his job by doing things my way and not your way. . . .["] (*Id.*) When the court juxtaposes this alleged direct evidence of age discrimination with the Plaintiff's eventual termination by Church, it is plausible that Plaintiff was

terminated because of his age. As a result, Plaintiff states a plausible claim of age discrimination under the ADEA for the purposes of Rule 12(b)(6).

In conclusion, the factual allegations included in the Amended Complaint are sufficient to "'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Connelly,* 809 F.3d at 789 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)). When liberally construed and taken as true, the pro se Plaintiff's factual allegations support plausible causes of action for all claims alleged in the Amended Complaint. Therefore, Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6) will be denied.

<u>CONCLUSION</u>

For the reasons discussed above, the Court will deny Defendants' Motion to Dismiss for failure to exhaust administrative remedies, and for failure to state a claim pursuant to Rule 12(b)(6).

An appropriate Order will follow:

Dated: January 26, 2018                                          BY THE COURT:


                                                                 <u>S/Lisa Pupo Lenihan</u>
                                                                 LISA PUPO LENIHAN
                                                                 United States Magistrate Judge


cc:     Carl R. Stull
        120 Lafayette Avenue
        Vandergrift, PA 15690

        All Counsel of Record
        Via Electronic Filing